JOHN P. HARTIGAN, ATTORNEY GENERAL *ex rel.* WILLIAM A. MURPHY *et al. vs.* TIMOTHY E. MOLLOY *et al.*, BOARD OF CANVASSERS AND REGISTRATION OF THE CITY OF PROVIDENCE.

NOVEMBER 1, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

PER CURIAM. This is a petition for a writ of mandamus brought by the relators as candidates for certain offices in the city of Providence against the respondents as members of the board of canvassers of said city. It seeks to command the respondents to certify to the secretary of state according to public laws 1938, chapter 2640, the nominations of the relators William A. Murphy, as candidate for alderman, and Austin D. Crowley, John J. Martin and Martin Hartigan, as candidates respectively for councilman, in said city under the party or political principle designated as "Boulevard Independent", so that the ballot labels may be prepared and inserted in the proper voting machines to be used in the first ward of the city of Providence at the election to be held therein November 8, 1938.

The petition alleges substantially that the relators have severally been placed in nomination for election to these respective offices by virtue of nomination papers signed by at least fifty duly qualified electors of said ward, as required by G. L. 1923, chap. 11, sec. 13; that the respondents have heretofore refused to certify their nominations to the secretary of state, according to law; and that the time fixed by P. L. 1938, chap. 2640 for such certification has expired.

At the hearing before us the parties stipulated in writing (1) that thirty-seven of the signatures appearing upon the nomination papers are valid for that purpose under the law; (2) that fourteen of the remaining signatures on the nomination papers were rejected by the respondents solely because a check mark appeared beside each of their names upon the voting list used at a Democratic caucus held in the first ward of the city of Providence in the year 1938; (3) that the records of that caucus were returned according to law to the secretary of state and show a check mark beside the name of each of these fourteen signers, indicating that said persons were checked as having voted at said caucus; that these check lists were signed and sworn to by the proper officials in accordance with the law and more particularly the provisions of sec. 16 of chap. 1515, P. L. 1930, as

amended by chap. 2640, P. L. 1938; and (4) that the four-teen persons whose names were thus rejected would testify, if they appeared as witnesses, that they did not attend or vote at a caucus of any political party within three years prior to October 1938 and did not sign any nomination papers for any candidates except the nomination papers of the relators.

It is not disputed that the petitioners presented to the respondents in advance of the hearing the affidavit of each of these fourteen signers, all of whom were women, substan-tiating the facts as stipulated by the parties. It also appears that the relators were not informed by the respondents of the rejection of these fourteen qualified electors and the reason therefor, until some time after October 8, the date when certification of nominations is required by law.

A consideration of G. L. 1923, chap. 11, and P. L. 1930, chap. 1515, as amended by P. L. 1938, chap. 2640, and other pertinent provisions of law with reference to the duties of boards of canvassers in the cities has led us to the following conclusions.

It is the right of the relators to have their nomination papers accepted and certified by the respondents if such papers meet the requirements of law as to form, and time of filing, and also contain the names and addresses of fifty qualified electors who have not disqualified themselves, under the law, from signing such papers. It is the duty of the board to receive such nomination papers if they meet the above requirements as to form and time of filing. It is the duty of the respondents as a board of canvassers to then ascertain, if found otherwise in proper form, whether such nomination papers contain the signatures and addresses of fifty qualified electors who are in fact eligible to sign such nomination papers. How such fact shall be determined and what value shall be given the check marks appearing beside the names upon the caucus voting lists is not specified in any of the statutes which have been brought to our attention. In the absence of any express provision to the contrary, the

board of canvassers may use for guidance in performing their duties the information obtained from check lists which have been used in a caucus of any political party and which have been properly returned according to law; but the information which the board thus obtains from the check marks beside the names upon such a caucus voting list, though binding until properly questioned, is not conclusive for all purposes upon the right of the candidates or of the elector who signed the nomination papers.

If the representation that an elector makes by signing the nomination papers of candidates for office, to the effect that he is a qualified elector and eligible to sign those papers, is apparently contradicted by the check mark appearing beside his name on the caucus voting list, the candidates upon such nomination papers have the right to be seasonably informed of such apparent contradiction, in order that the fact, upon which depends the elector's legal qualification to sign the nomination papers, may be established.

In the instant case the evidence clearly shows that the nomination papers in question met the requirements of law as to form and time of filing and are governed by our recent opinion in *Hartigan, ex rel., Cahir* v. *Molloy, et al.,* 61 R. I. 495. It also shows clearly that the relators were not seasonably informed by the respondents of the apparent contradiction between the signatures of the fourteen qualified electors in question and the check marks appearing beside their names on the caucus voting list, a copy of which was used by the board in making their rejections. The evidence further shows clearly that the fourteen rejected signers were all qualified to vote in the first ward for the offices of alderman and councilman, and that none of them had disqualified herself under the law from signing the "Boulevard Independent" nomination papers for candidates for these offices to be voted upon at the election to be held therein on November 8, 1938. Indeed, the evidence on the ultimate fact upon which the qualification of these fourteen electors for the purpose in question must be decided, as a matter of

law, was not actually contradicted. The caucus clerk in making his certificate upon the check list used by the respondents to determine whether the signers had voted in that caucus does not make affidavit that the persons whose names were checked upon that list were in truth and fact the persons who actually voted on those names in that caucus.

Upon the evidence appearing before us we are bound to conclude, as a matter of law, that the fourteen rejected signers were qualified electors of the first ward and that none of them had disqualified herself under the law from signing the nomination papers in question. The relators thus have presented a clear, substantial right to have their nomination papers filed and their nominations as candidates for alderman and councilman under the designation of "Boulevard Independent" certified by the respondents to the secretary of state.

When the relators were informed, after the statutory time for certification had expired, that their nominations were not so certified, they took reasonably prompt steps to enforce their rights by the instant petition. If another remedy were available to the relators, we are of the opinion that it alone would not effectually obtain the enforcement of the right to which we have found the relators are entitled. In the absence of any other speedy and adequate remedy, and considering the element of time within which their rights must be enforced to be effectual, and the public interest and rights involved in an election, we are of the opinion that, in the circumstances of this case, the relators are not precluded from seeking an adequate and effectual remedy to enforce their rights by a writ of mandamus.

Upon the evidence and circumstances appearing before us the relators have made out a case for the relief which they seek and the prayer of their petition for relief is granted.

*Daniel A. Colton,* for petitioners.

*John T. Walsh,* Assistant City Solicitor, for respondents.